IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| GULF RESTORATION NETWORK | § | PLAINTIFF |
| | § | |
| v. | § | CAUSE NO. 1:08cv186-LG-RHW |
| | § | |
| HANCOCK COUNTY DEVELOPMENT, | § | |
| LLC, and JOSHUA LADNER | § | DEFENDANTS |

## ORDER DENYING MOTION TO DISMISS

BEFORE THE COURT is Defendant Hancock County Land, LLC, f/k/a Hancock County Development, LLC's [7] Motion to Dismiss pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6). Plaintiff Gulf Restoration Network initiated this citizen lawsuit under the Clean Water Act ("CWA") for alleged violations related to a construction project on Hancock's property. Hancock argues that it did not receive adequate statutory notice as required by 33 U.S.C. § 1365(b)(1)(A) regarding the dates, nature, and location of the alleged violations. According to Hancock, "the notice requirements . . . unequivocally require Plaintiff to identify 'the *location*,'" "*the* date" and "*the* standard" violated. (Def.'s Mot. Dismiss at 8, 9,15). Gulf Restoration responds that the notice is sufficient. For the reasons state below, the Court finds that Plaintiff's § 1365(b)(1)(A) was sufficient to permit the Defendants to identify the specific standard, limitation, or order alleged to have been violated, the location of the alleged violations, and the dates of the alleged violations. The motion is denied.

**FACTS AND PROCEDURAL HISTORY**

According to the Complaint, Gulf Restoration "is a network of environmental, social justice, and citizens' groups and individuals committed to restoring the Gulf of Mexico to an

ecologically and biologically sustainable condition." (Compl. at 3 (¶8)). Gulf Restoration's members include Hancock County, Mississippi residents who live and own property adjacent to the Hancock property.

The Complaint alleges that Hancock is a private Alabama corporation, which owns property, including wetlands, in and near Bay St. Louis, Mississippi. "On or before May 7, 2007, Defendants began clearing, dredging, and filling wetlands, and constructing ditches, berms, dams, canals, and several miles of road on approximately 700 acres of the Wetlands property." *Id.* at 7 (¶30). Defendant Joshua Ladner was the contractor on this project. Defendants caused storm water and fill material to be dumped into Bayou Maron. The construction and the dumping are alleged to have been done without the proper permits. Finally, the Complaint provides that it sent a pre-suit notice, which is not attached but is "incorporated by reference." *Id.* at 3 (¶5).

This notice, sent on January 10, 2008[1], charges Defendants with constructing on and dredging wetlands without a permit and dumping fill and storm water into navigable waters without permits. Approximately four months later, Gulf Restoration filed the instant action.

**DISCUSSION**

Generally, before commencing a lawsuit under the CWA, the plaintiff must serve the defendant with sixty days' notice of certain alleged violations. 33 U.S.C. § 1365(b)(1)(A). Specifically, the CWA provides:

No action may be commenced–
(1) under subsection (a)(1) of this section–

---

[1]The letter is dated 2007. The parties agree that this is a typographical error, and the actual date is 2008.

(A) prior to sixty days after the plaintiff has given notice of the alleged violation (I) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order[.]

33 U.S.C. § 1365(b)(1)(A). Failure to do so, results in dismissal of the lawsuit. *Hallstrom v. Tillamook County*, 493 U.S. 20, 26 (1989). The notice must include "sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, . . . the location of the alleged violation, the date or dates of such violation. . . ." 40 C.F.R. § 135.3(a).

The purposes of the notice and sixty-day delay requirement are to allow the violator to bring itself into compliance and to allow the government agencies to enforce compliance. *Hallstrom*, 493 U.S. at 29. Other courts have held that the notice is sufficient when it is specific enough to give the violator the opportunity to identify and correct the problem. *Karr v. Hefner*, 475 F.3d 1192, 1200 (10th Cir. 2007); *Atl. States Legal Found. v. Stroh Die Casting Co.*, 116 F.3d 814, 819 (7th Cir. 1997); *Pub. Interest Research Group of N.J., Inc. v. Hercules, Inc.*, 50 F.3d 1239, 1249 (3d Cir. 1995). District Courts in the Fifth Circuit have employed this approach as well. *St. Bernard Citizens for Envtl. Quality, Inc. v. Chalmette Ref., L.L.C.*, 500 F. Supp. 2d 592, 609 (E.D. La. 2007) (Vance, J.); *Friends of the Earth, Inc. v. Chevron Chem. Co.*, 900 F. Supp. 67, 77 (E.D. Tex. 1995) (Schell, J.); *ACORN v. Edwards*, 842 F. Supp. 227, 232 (E.D. La. 1993) (Schwartz, J.) (pre-*Hercules* case). *See also*, *Pub. Citizen v. Am. Elec. Power Co.*, No. 5:05-cv-39-DF, 2006 U.S. Dist. LEXIS 93336 *12-13 (E.D. Tex. Dec. 27, 2006) (Folsom, J.); *Envtl. Conservation Org. v. City of Dallas*, No. 3-03-CV-2951-BD, 2005 U.S. Dist. LEXIS 15502 at *15-16 (N.D. Tex. July 26, 2005) (Kaplan, J.); *In re: Voluntary Purchasing Groups, Inc., Litig.*, No. 3:96-cv-2985-H, 2002 U.S. Dist. LEXIS 19819 at * 8 (N.D. Tex. Oct. 16, 2002)

(Sanders, J.). The regulation does not require the plaintiff to list every specific aspect or detail of every alleged violation. *San Francisco Baykeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1157-58 (9th Cir. 2002) (applying "strict compliance"); *Water Keeper Alliance v. U.S. Dep't of Def.*, 271 F.3d 21, 29-30 (1st Cir. 2001) (same); *Am. Canoe Ass'n v. D.C. Water & Sewer Auth.*, 306 F. Supp. 2d 30, 35-37 (D.D.C. 2004) (same). *Cf.*, *Nat'l Parks Conservation Ass'n, Inc. v. Tenn. Valley Auth.*, 175 F. Supp. 2d 1071 (E.D. Tenn. 2001) (appearing to require heightened notice). All that is required is "reasonable specificity." *Catskill Mountains Chapter of Trout Unltd., Inc. v. New York*, 273 F.3d 481, 488 (2d Cir. 2001).

DATES

A pre-suit notice that identifies a range of several years is sufficient. *Public Citizen*, 2006 U.S. Dist. LEXIS 93336 at *13 (citations omitted) ("since at least 2000" adequate to identify dates). The exact dates are not required. *Sierra Club v. Tri-State Generation & Transmission Ass'n, Inc.,* 173 F.R.D. 275, 284 (D. Colo. 1997) ("for at least the past five years" sufficient); *Hudson Riverkeeper Fund, Inc. v. Putnam Hosp. Ctr., Inc.*, 891 F. Supp. 152, 154 (S.D.N.Y. 1995) (notice insufficient where no indication of time given). "[A]t a bare minimum some reasonably specific indication of the time-frame when the violations occurred is necessary." *Id.*

The Complaint alleges that the offending conduct began "[i]n mid-2007," and "[o]n or before May 7, 2007," with the unpermitted dredging, clearing and filling of the subject wetlands. (Compl. at 1, 7 (¶30)). The pre-suit notice reads:

> At some point prior to May 7, 2007, Stennis Technology Park, Inc[.,] or a related company, began the construction of roadways, berms, ditches, canals, and mechanized clearing in waters of the United States, including wetlands. This activity took place on property belonging to Hancock County Development, LLC and identified as parcels 134-0-18-002.000 and 126-0-13-004.001 in the Hancock

4

> County Land Rolls, hereafter. The unauthorized work was conducted by Mr. Joshua Ladner, or a related company, serving as contractor. . . . Stormwater runoff from the site has resulted in a discharge of sediment to Bayou Maron and deposition of sediment on properties adjacent to the parcels owned by Hancock County Development, LLC. . . . Each day of unpermitted runoff constitutes a separate violation of the Clean Water Act.

(Hancock's Mot. Dismiss Ex. A at 1-3). Hancock argues that the notice is not specific enough to allege a starting date of the violations. It claims it does not know whether it should go back one, five, or twenty years to seek out the violations. Gulf Restoration responds that the notice states that the conduct began on May 7, 2007, and continues to date.

Gulf Restoration's notice could have provided the exact month, day and year on which the violations began and continued to occur, but it was not required to do so. Instead, the notice provides that the violations began when Stennis Technology or a related company, and contractor Joshua Ladner or a related company, began construction on identifiable parcels of land, owned by Hancock. The notice even narrows down the date of this construction. This information is sufficiently specific to allow Hancock and the government agencies to identify the date or dates of the alleged violations and to do so with relative ease. It is specific enough to serve the statutory purpose of allowing the opportunity for self-compliance and agency enforcement.

STANDARD, LIMITATION OR ORDER

Hancock argues that the Complaint lists an additional standard violated, which was not in the notice. Although the notice specifically cites Sections 402 and 404 of the CWA, the Complaint additionally cites Section 301(a). Gulf Restoration responds that Section 301(a) is the general section that was violated, but that Sections 402 and 404 are the more specific subsets of the Section 301(a) violation. Therefore, Gulf Restoration asserts that the notice was adequate.

5

The Complaint states, "The Defendants undertook these activities without obtaining the required permits under Sections 402 and 404 of the federal Clean Water Act, 33 U.S.C. §§ 1311(a), 1342, 1344." (Compl. at 1). Further, "Clean Water Act § 301(a) prohibits the 'discharge of any pollutant' into the navigable waters of the United States except where permitted under the Clean Water Act. 33 U.S.C. § 1311(a)." (Compl. at 4 (¶14)). The "First Cause of Action" is styled, "Defendants Filled Wetlands without a Clean Water Act § 404 Permit." *Id.* at 9. The "Second Cause of Action" is styled, "Defendants Are Discharging Stormwater without a Clean Water Act § 402 Permit." *Id.* at 10. According to the Complaint, Gulf Restoration claims that Defendants violated Section 301(a) only because they violated Sections 402 and 404. The pre-suit notice complained of these same violations, but only specifically cited Sections 402 and 404.

Section 301(a) reads, "Except as in compliance with this section and sections . . . 402, and 404 of this Act, the discharge of any pollutant by any person shall be unlawful." 33 U.S.C. § 1311(a). Only citing to Sections 402 and 404 was therefore sufficient to permit the recipients to identify the violations alleged in the Complaint. There was no need to additionally cite to the more general provisions of the CWA.

LOCATION

Finally, Hancock argues that the Complaint gives additional parcels of land as sites of the violations, which parcels were not contained in the pre-suit notice. Gulf Restoration responds that the notice was sufficient to identify these additional parcels of land, because they are also owned by Hancock and are contiguous to those locations listed in the notice.

The Northern District of Illinois held that a notice was sufficient to alert the recipient to

6

violations also occurring on an abutting lake. *York Ctr. Park Dist. v. Krilich*, No. 89 C 6000, 1993 U.S. Dist. LEXIS 4675 at * 7 (N.D. Ill. Apr. 13, 1993). Plaintiff was the owner of a park, which included a five-acre lake, Lake Yelenich. *Id.* at *2. Defendant Krilich owned 120 acres of land, including ponds and lakes, immediately east of Lake Yelenich. *Id.* Defendants began construction on his property. *Id.* Among other things, they discharged fill and dredged material into Lake Yelenich. *Id.* Defendants claimed the notice "did not specifically refer to the filling of Lake Yelenich," because the location listed in the notice "did not properly place them on notice of any violations occurring which directly affected Lake Yelenich." *Id.* at *5-6. The notice provided, "The location where these illegal activities are alleged to have occurred is on the properties owned and controlled by you and . . . are more specifically identified in Paragraph 6. . . ." *Id.* Paragraph 6 provided, "Wetlands are located on property owned or controlled by the Respondents in a development known as Renaissance Park located in the southeast quarter of Section 21, Township 39N, Range 11E, Village of Oakbrook Terrace, DuPage County, Illinois. . . ." *Id.* at *6. The court noted, "[T]he EPA instructs us that the parties, location, and alleged violations be delineated in the notice so as to identify for the alleged violator the activity constituting the violation." *Id.* at *7. "Because the notice specifically stated that the violations occurred on property owned or 'controlled' by Defendants, it is only reasonable that Defendants were aware that the Clean Water Act violations may also concern their control of Lake Yelenich." *Id.*

>In the instant case, the notice provides:
>
>This activity took place on property belonging to Hancock County Development, LLC and identified as parcels 134-0-18-002.00 and 126-0-13-004.001 in the Hancock County Land Rolls, hereafter.

> . . .
> The deposit of fill materials . . . in the jurisdictional wetlands located on parcels 134-0-18-002.00 and 126-0-13-004.001 at 6300 Bayou LaCroix Road is not covered by any individual or general Section 404 permit and therefore constitutes a violation of Section 402 and the other provisions of the Clean Water Act.
> . . .
> Stormwater runoff from the site has resulted in a discharge of sediment to Bayou Maron and deposition of sediment on properties adjacent to the parcels owned by Hancock County Development, LLC.

(Def.'s Mot. Dismiss Ex. A at 1-2). Just prior to this description, the notice described the activities and violations as being associated with a specified construction project.

The Complaint describes the unpermitted activity, associated with the same construction project, as occurring on "approximately 700 acres of wetlands property, listed as parcels 134-0-18-002.00, 126-0-13-004.001, 134B-0-17-001.00, 133Q-0-08-003.000, 133-0-07-005.000, and 134G-0-17-002.000 in the Hancock County land rolls (the 'Wetlands Property'). . . ." (Compl. at 2 (¶2)). "Stormwater runoff from the Wetlands Property discharges sediment into Bayou Maron and causes flooding and deposits sediment on adjacent properties including Plaintiff's members' property." *Id.* at 8 (¶37)).

Without question, the notice is sufficient to identify violations on the first two listed parcels. The question remains whether the notice otherwise provides "sufficient information to permit the recipient to identify" the location and to give the opportunity for agency enforcement and self-compliance. Reading the notice as a whole, the Court finds that notice was adequate. The above-quoted portion is not the only information provided in the notice which would permit identification of the location. Recall that the notice states that the violations are all associated with a specified construction project. Further, the notice also directs attention to certain

8

violations "on properties adjacent to the parcels owned by Hancock." All of this information, combined with the two specified parcels and address, provide sufficient information to permit the recipients to identify all the locations of the alleged violations. The notice fulfills the dictates and purposes of the notice requirements.

Hancock cites *Sierra Club Ohio Chapter v. City of Columbus*, 282 F. Supp. 2d 756, 766 (S.D. Ohio 2003), for the proposition that "courts have routinely held that failures to accurately identify the location of alleged violations renders the notice insufficient." (Def.'s Mot. Dismiss at 12). However, the *Sierra Club Ohio* decision does not provide the actual content of the notices at issue. Moreover, it found the notices insufficient for failure to identify the subparagraphs of the permits which were alleged to be violated or the manner in which they were violated. *Sierra Club Ohio*, 282 F. Supp. 2d at 765-75. As for some of the alleged violations, the court did hold, "the notice letters also fail to indicate the dates or specific locations" of the violations. *Id.* at 766-67. *See also*, *id.* at 768-75. Beyond these one sentence conclusions, there was no further analysis of the location requirement. From what the Court can glean, the notice cited discharges of "raw sewage through hundreds of unapproved SSOs" "directly and indirectly into" "various rivers in Ohio." *Id.* at 759, 766. Therefore, it is not clear whether *Sierra Club Ohio* was requiring the exact locations.

The *National Parks* case, relied upon by Hancock, involved two of Tennessee Valley Authority's power plants, which were separately noticed for violation of opacity requirements. *National Parks*, 175 F. Supp. 2d at 1076. Each plant only had two smokestacks from which the offending emissions could have occurred. *Id.* at 1073-74. The notices stated that the violations occurred through operation of the respective plant, but the court nevertheless held that the notices

9

did not "identify at which sites the violations occurred." *Id.* at 1076-77. The court did not explain what further information was needed or why citing to the plant that was emitting the offending smoke was not adequate. Thus, it appears that the court required a heightened notice that is not mandated by the EPA's regulation. "More importantly," however, the court held the notice was insufficient, because it concerned an emissions violation, but the lawsuit did not. *Id.* at 1077. Rather, the lawsuit complained that the state environmental agency illegally "modif[ied] TVA's permits for the [two plants] without first seeking EPA approval." *Id.*

In the opinion of the Court, §1365(b)(1)(A) does not require the exact location of the violations. It requires only sufficient information which would permit the recipient to identify, among other things, the locations of the alleged violations.

**IT IS THEREFORE ORDERED AND ADJUDGED** that for the reasons stated above, Defendant Hancock County Land, LLC, f/k/a Hancock County Development, LLC's [7] Motion to Dismiss should be and is hereby **DENIED**.

**SO ORDERED AND ADJUDGED** this the 3rd day of February, 2009.

*s/ Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE