# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| GULF RESTORATION NETWORK § | | PLAINTIFF |
| § | | |
| VERSUS § | | CAUSE NO. 1:08cv186-LG-RHW |
| § | | |
| HANCOCK COUNTY DEVELOPMENT, § | | |
| LLC § | | DEFENDANT |

## ORDER DENYING SECOND MOTION TO DISMISS

BEFORE THE COURT is Defendant Hancock County Land, LLC, f/k/a Hancock County Development, LLC's second [36] Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Gulf Restoration Network initiated this citizen lawsuit under the Clean Water Act for alleged violations related to a construction project on Hancock's property. Hancock argues the Complaint fails to state a claim, because the United States Army Corps of Engineers was diligently investigating this case prior to Gulf Restoration's notice of intent to sue. The Court has considered the parties' submissions[1] and relevant legal authority. The motion is denied.

## FACTS AND PROCEDURAL HISTORY

According to the Complaint, Gulf Restoration is an environmental group dedicated to the preservation of the waters of the Gulf Coast region. Gulf Restoration has members who live on and own property adjacent to Hancock's property. Hancock is alleged to own property that includes wetlands in and near Bay St. Louis, Mississippi. "On or before May 7, 2007, [Hancock] began clearing, dredging, and filling wetlands, and constructing ditches, berms, dams, canals, and

---

[1]The Court also considered Gulf Restoration's [51] Motion for Consideration of Supplemental Information Regarding Defendant's Motion to Dismiss, as well as Hancock's response.

several miles of road on approximately 700 acres of the Wetlands property." (Compl. at 7 (¶30)). In addition, Hancock allegedly caused storm water and fill material to be deposited into Bayou Maron. All of this work is alleged to have been performed without required permits.

On November 2, the United States Army Corps of Engineers issued a Notice of Violation to Hancock. The violations cited were for the unauthorized filling and dredging of wetlands associated with the construction project. The notice ordered Hancock to halt its construction activities, asked for information to help the Corps decide how to resolve the matter, and stated that the Corps was sending the letter to certain state and federal agencies for their input on how to resolve the violations. On January 10, 2008, Gulf Restoration issued its notice of intent to sue to Hancock for these same violations plus for alleged unauthorized dumping of storm water into the wetlands. The Corps turned the matter over to the Environmental Protection Agency. On the same day as Gulf Restoration's letter, the EPA wrote to Hancock that the EPA was investigating only the filling and dredging allegations. The EPA requested information and directed Hancock to resources on voluntary compliance. On May 8, Gulf Restoration filed the instant suit alleging that Hancock engaged in unauthorized filling and dredging of wetlands and also unauthorized storm water runoff into wetlands.

## DISCUSSION

STANDARD FOR MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56:

Because the Court was presented and has considered matters outside the pleadings, the Court converts the motion to a motion for summary judgment. FED. R. CIV. P. 12(d). A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

2

to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56. To make this determination, the Court must view the evidence in the light most favorable to the non-moving party. *Abarca v. Metro. Transit. Auth.*, 404 F.3d 938, 940 (5th Cir. 2005). A "material fact" is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute about a material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* The party that bears the burden of proof at trial also bears the burden of proof at the summary judgment stage. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986). "[W]hen a motion for summary judgment is made and supported . . . an adverse party may not rest upon . . . mere allegations or denials . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

The Clean Water Act provides that citizens may sue alleged violators for injunctive and civil penalty relief. 33 U.S.C. § 1365(a). There are two bars to these citizen suits, however. *Lockett v. Envtl. Prot. Agency*, 319 F.3d 678, 683 (5th Cir. 2003). They are found in Sections 1365(b)(1)(B) and 1319(g)(6). *Id.* Hancock argues the Corps was diligently investigating Gulf Restoration's allegations before it sent its pre-suit notice; therefore, the case must be dismissed pursuant to both 33 U.S.C. §§ 1365(b)(1)(B), 1319(g)(6). Specifically, Hancock points to the Corps's November 2, 2007, Notice of Violation as the commencement of an "enforcement action." Gulf Restoration responds that (1) no federal lawsuit has been filed in court, (2) there have been no administrative orders assessing penalties, (3) there have been no administrative actions seeking civil penalties, and in the alternative, (4) Section 1319 would only bar Gulf Restoration's civil penalties claim (5) for only those violations that the Government addressed.

3

The Court examines each potential bar in turn.

SECTION 1365(B)(1)(B)

"Except as provided in subsection (b) of this section and section [1319(g)(6)], any citizen may commence a civil action . . . against any person . . . who is alleged to be in violation" of the Clean Water Act. 33 U.S.C. § 1365(a)(1). Subsection b provides in pertinent part:

> No action may be commenced under subsection (a)(1) of this section . . . if the Administrator or State has commenced and is diligently prosecuting a *civil or criminal action in a court* of the United States, or a State to require compliance . . . but in any such action *in a court* of the United States any citizen may intervene as a matter of right.

33 U.S.C. § 1365(b)(1)(B) (emphasis added). The plain language of this statute only bars citizen lawsuits when the EPA or State government has brought a civil or criminal lawsuit in federal or state court. Indeed, "the plain meaning of 'court of the United States or a State' excludes administrative actions." *Texans United for a Safe Econ. Educ. Fund v. Crown Cent. Petroleum Corp.*, 207 F.3d 789, 795 (5th Cir. 2000). Thus, the bar presented by Section 1365(b)(1)(B) "is not applicable [where] neither the EPA nor the [State] has brought an action in either state or federal court." *Lockett*, 319 F.3d at 683.

It is undisputed that neither the Administrator of the EPA nor the State of Mississippi, has commenced a civil or criminal action in court concerning the alleged violations by Hancock. Therefore, Section 1365(b)(1)(B) does not bar this citizen lawsuit.

SECTION 1319(G)(6)

Section 1319(g)(1) provides that the EPA Administrator and the Secretary of the Army Corps of Engineers may assess administrative civil penalties against polluters. Subsections 2-5 set forth those administrative procedures, which include notice to the offender and the public, the

4

right to be heard, and judicial review of the administrative order. Subsection 6 provides:

> (6) Effect of order.
> (A) Limitation on actions under other sections. Action taken by the Administrator or the Secretary, as the case may be, *under this subsection* [Section 1319(g)] shall not affect or limit the Administrator's or Secretary's authority to enforce any provision of this Act [33 U.S.C. §§ 1251 et seq.]; except that any violation--
> (i) with respect to which the Administrator or the Secretary has commenced and is diligently prosecuting an action *under this subsection*,
> (ii) with respect to which a State has commenced and is diligently prosecuting an action under a State law *comparable to this subsection*, or
> (iii) for which the Administrator, the Secretary, or the State has issued a final order not subject to further judicial review and the violator has paid a penalty assessed *under this subsection*, or such comparable State law, as the case may be,
> shall not be the subject of a *civil penalty action* under subsection (d) of this section or section 311(b) or section 505 of this Act [33 U.S.C. § 1321(b) or 1365].
> (B) Applicability of limitation with respect to citizen suits. The limitations contained in subparagraph (A) on *civil penalty actions* under section 505 of this Act [33 U.S.C. § 1365] shall not apply with respect to any violation for which--
> (i) a civil action under section 505(a)(1) of this Act [33 U.S.C. § 1365(a)(1)] has been filed prior to commencement of an action under this subsection, or
> (ii) notice of an alleged violation of section 505(a)(1) of this Act [33 U.S.C. § 1365(a)(1)] has been given in accordance with section 505(b)(1)(A) [33 U.S.C. § 1365(b)(1)(A)] prior to commencement of an action under this subsection and an action under section 505(a)(1) [33 U.S.C. § 1365(a)(1)] with respect to such alleged violation is filed before the 120th day after the date on which such notice is given.

33 U.S.C. § 1319(g)(6) (emphasis added). In other words, an administrative action by the EPA or Corps for civil penalties, as to a specific violation, may preclude a citizen's susbequent lawsuit for civil penalties on that same violation. A citizen would still be free to seek injunctive relief. Thus, the bar found in Section 1319(g)(6) is narrower than the former, because it does not bar the entire citizen suit. *Id.*; *Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Cont'l Carbon Co.*, 428 F.3d 1285, 1297 (10th Cir. 2005); *Atl. States Legal Found., Inc. v. Hamelin*, 182 F. Supp. 2d 235, 248 (N.D.N.Y. 2001); *Sierra Club v. Hyundai Am., Inc.*, 23 F. Supp. 2d

1177, 1180 (D.Or. 1997); *United States v. Smithfield Foods,* 965 F. Supp. 769, 791 (E.D.Va. 1997); *Cal. Sportsfishing Prot. Alliance v. City of W. Sacremento*, 905 F. Supp. 792, 807 (E.D. Cal. 1995); *Coal. for a Liveable W. Side v. N.Y. City Dep't of Envtl. Prot.*, 830 F. Supp. 194, 196 (S.D.N.Y. 1993); *Natural Res. Def. Council, Inc. v. Fina Oil & Chem. Co.*, 806 F. Supp. 145, 146 (E.D. Tex. 1992) ("precluded as to penalties"). It only bars a citizen from seeking civil penalties. 33 U.S.C. § 1319(g)(6). *See, e.g.*, *Paper*, 428 F.3d at 1297. Section 1319(g)(6) repeatedly refers to a limitation on "civil penalty actions" in a subsection that discusses administrative civil penalties. This contrasts with Section 1365(b)(1)(B)'s language referring only to "actions."

Additionally, the 1319(g)(6) bar is narrower, because it only applies when the EPA or Corps has acted pursuant to Section 1319(g), i.e., "under this subsection." Even then, the citizen may avoid the bar if he either filed the lawsuit or issued the pre-suit notice before the EPA or Corps's administrative actions.

Gulf Restoration first argues that neither the Corps nor the EPA acted pursuant to Section 1319(g). As previously discussed, this preclusion only applies when the Corps or EPA have acted "under this subsection," i.e., subsection g of Section 1319. *Natural Resources,* 806 F. Supp. at 146. *See also*, *Wash. Pub. Interest Research Group v. Pendleton Woolen Mills*, 11 F.3d 883, 885 (9th Cir. 1993); *Friends of Santa Fe County v. Lac Minerals, Inc.*, 892 F. Supp. 1333, 1347 (D.N.M. 1995); *Sierra Club v. Colo. Ref. Co.*, 852 F. Supp. 1476, 1485 (D. Colo. 1994); *Orange Env't, Inc. v. County of Orange*, 811 F. Supp. 926, 932 (S.D.N.Y. 1993); *Ark. Wildlife Fed'n v. Bekaert Corp.*, 791 F. Supp. 769, 775 (W.D. Ark. 1992). This subsection provides the administrative procedures through which either the Corps or EPA may assess civil penalties. Thus, preclusion "applies only when the E.P.A. [or Corps] has brought an action 'under this

6

subsection,' that is, an action that assesses administrative penalties under subsection 1319(g), with public notice and all the other requirements contained therein." *Natural Resources*, 806 F. Supp. at 146. Moreover, the EPA's administrative civil penalty action "commences upon either the filing of an administrative complaint or the issuance of a finalized consent agreement." *Or. State Pub. Interest Research Group, Inc. v. Pac. Coast Seafoods Co.*, 341 F. Supp. 2d 1170, 1175 (D.Or. 2004) (citing 40 C.F.R. § 22.13). A reservation of rights to bring an administrative civil penalty action does not suffice as commencement or diligent prosecution. *Save Our Bays & Beaches v. City of Honolulu*, 904 F. Supp. 1098, 1128 (D. Haw. 1994).

For example, in *Natural Resources*, 806 F. Supp. at 146, the court held that an EPA compliance order issued under Section 1319(a) could not preclude an action for civil penalties, because the order was not an order assessing administrative penalties under subsection g. Given subsection g's "explicit requirements . . . as to what constitutes an action under it," a compliance order did not qualify. *Id.*

In the instant case Hancock relies on the Corps's Notice of Violation, dated November 2, 2007, as the commencement of an administrative civil penalty action by the Corps. It states, in part:

> This is a Notice of Violation involving the unauthorized discharge of dredged and/or fill material into waters of the United States including wetlands. The unauthorized work consists of the construction of roadways, berms, ditches, canals, and mechanized land clearing. . . . We are currently conducting an investigation to determine the appropriate course of action to be taken to resolve this violation. [Certain information was requested]. Until such time as this matter is resolved, no further work is to be performed. . . . You are advised that substantial penalties are available for conducting work in waters of the U.S., including wetlands, without the necessary DA authorization. . . . Section 309 [33 U.S.C. 1319] of the Clean Water Act provides penalties, including fines of up to $50,000 per day or imprisonment for up to three years, or both for any person who

7

> knowingly violates Section 301 of the Clean Water Act. . . . We are furnishing copies of this letter to [the Mississippi Department of Marine Resources, Mississippi Department of Environmental Quality, City of Bay St. Louis, Hancock County, and EPA] in order to solicit their views concerning resolution of this violation.

(Def.'s 2d Mot. Dismiss Ex. A) (emphasis added). This indicates that the Corps was not commencing a 1319(g) administrative civil penalty action. Instead, it was requesting information "to determine" how it wanted to "resolve" the case, as well as input from the EPA and other agencies on a resolution. Further, the letter specifically referenced the criminal penalties found in subsection c. 33 U.S.C. § 1319(c)(2). These, of course, are not recoverable in a mere administrative action pursuant to subsection g. *Id.*

In fact, the Corps's own regulations support this view. They state that, when the Corps detects a violation, the Corps should issue a cease and desist order "pending resolution" of the matter, and the Corps should request information "to determine what course of action [to] pursue in resolving the violation." 33 C.F.R. § 326.3(c)(3). The district engineer of the Corps should then "solicit the views" of other agencies "to facilitate his decision on what initial corrective measures are required." 33 C.F.R. § 326.3(d). If initial corrective measures substantially eliminate current and future impacts from the unauthorized pollution, "further enforcement action should normally be unnecessary." *Id*. He may then "accept an after-the-fact permit application." 33 C.F.R. § 326.3(e). It is the Corps's policy to "normally coordinate with EPA to determine the most effective and efficient manner by which resolution of a section 404 violation can be achieved." 33 C.F.R. § 326.2. In other words, administrative civil penalty actions under Section 1319(g) are not the only enforcement actions used by the Corps. The Corps first issues a cease and desist order and then, along with at least the EPA, it decides whether only initial corrective

measures are required, whether an after-the-fact permit may be issued, and whether the EPA or itself will handle further action including "appropriate legal enforcement actions." 33 C.F.R. § 326.3(g). This is not confined to administrative civil penalty actions. 33 U.S.C. §§ 1319, 1365. As the letter and regulations indicate, the Corps had not yet decided whether or not to instigate an administrative civil penalty action.

There is no evidence of any further action by the Corps. If it had decided to institute administrative civil penalty proceedings, it would have had to implement those procedures set forth in Section 1319(g)(2-5), which includes notice of the proposed civil penalties to Hancock. 33 U.S.C. § 1319(g)(2); *Natural Resources*, 806 F. Supp. at 146. It is undisputed that the Corps did not do so. Further, it is undisputed that the Corps turned all enforcement decisions over to the EPA. It may only commence a civil administrative civil penalty action by filing an administrative complaint. There is no evidence that the EPA has ever done so. Instead, it only requested information to "aid . . . in reaching an appropriate enforcement resolution." (Def.'s 2d Mot. Dismiss Ex. C at 1). Because no administrative action for civil penalties was ever commenced by the Corps or EPA, the Section 1319(g)(6) bar is inapplicable.

**IT IS THEREFORE ORDERED AND ADJUDGED** that for the reasons stated above Defendant Hancock County Land, LLC, f/k/a Hancock County Development, LLC's second [36] Motion to Dismiss should be and is hereby **DENIED.**

**SO ORDERED AND ADJUDGED** this the 16th day of November, 2009.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE